IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ANDREW ADDEO | : | CIVIL ACTION |
|---|---|---|
| v. | : | No. 17-2239 |
| PHILADELPHIA FIREFIGHTER AND PARAMEDIC UNION: LOCAL 22 OF THE INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                              **March 19, 2018**

Plaintiff Andrew Addeo, a former City of Philadelphia firefighter, brings claims against the City and the Philadelphia Firefighters' and Paramedics' Union International Association of Fire Fighters Local 22 (the Union), arising out of the termination of his employment with the City following his second conviction for driving under the influence while off duty. In his original complaint, Addeo asserted a "hybrid § 301/duty of fair representation" claim against both Defendants, but he has since conceded that this Court lacks subject matter jurisdiction over this claim under *Crilly v. Southeastern Pennsylvania Transportation Authority*, 529 F.2d 1355 (3d Cir. 1976). Instead, Addeo seeks leave to file an amended complaint asserting a claim pursuant to 42 U.S.C. § 1983 against the City for violating his procedural due process rights, and a state law breach of duty of fair representation claim against the City and the Union. For the reasons set forth below, Addeo's motion for leave to file an amended complaint will be granted.

**FACTS**[1]

Addeo worked as a firefighter with the City of Philadelphia Fire Department from April 2004 until September 2015, when his employment was terminated. During his employment with the Fire Department, the Philadelphia Firefighters' and Paramedics' Union International Association of Fire Fighters Local 22 was the exclusive labor bargaining unit for firefighters and paramedics employed by the City of Philadelphia pursuant to a collective bargaining agreement between the City and the Union.

In August 2012, Addeo was charged with driving under the influence (DUI) while off duty. Addeo was sentenced to participation in the Accelerated Rehabilitative Disposition program for the DUI offense, and he successfully completed the program, including paying all fines and costs. The Fire Department also disciplined Addeo for the offense, imposing a 160-hour suspension in duty in August 2012 and a 30-day reduction in pay in January 2013, pursuant to the applicable Fire Department directives. Although Fire Department protocol requires firefighters to report for alcohol counseling and monitoring, including urine testing, for up to 18 months after a DUI, this protocol was not followed in Addeo's case.

---

[1] The record includes three iterations of Addeo's complaint: (1) his original complaint, (2) his original proposed amended complaint, and (3) a revised proposed amended complaint. The following facts are drawn from Addeo's revised proposed amended complaint, as the ultimate issue before the Court is whether that version of the complaint states a claim on which relief may be granted, which is also within this Court's original jurisdiction. For purposes of evaluating Addeo's motion for leave to amend, the Court accepts as true the well-pleaded factual allegations in Addeo's revised proposed amended complaint.

In its reply to Addeo's supplemental brief in support of his cross-motion for leave to amend, the City cites to various matters outside the pleadings, including portions of Addeo's "special investigation documents" and communications between the City and the Union regarding Addeo's grievance. Because these materials cannot be considered at the pleading stage, the Court will disregard them in evaluating the sufficiency of Addeo's revised proposed amended complaint. *Cf. Tubbs v. N. Am. Title Agency, Inc.*, 389 F. App'x 104, 105 (3d Cir. 2010) ("With limited exceptions, a district court cannot consider materials outside the pleadings without first converting the motion to dismiss into a motion for summary judgment.").

In March 2015, Addeo was again arrested for DUI while off duty. Addeo proceeded to trial, representing himself, and was convicted on September 15, 2015, and ordered to report for incarceration at the Bucks County prison within 24 hours. That same day, Addeo contacted Ed Marks, a Union official, to report his conviction and requested that the Union take the necessary action to protect his employment within the required seven-day period under the collective bargaining agreement. The following day, on September 16, 2015, Addeo called Fire Department Battalion Chief Mark Roundbehler, reported his arrest and conviction, and provided details regarding his incarceration.

On September 18, 2015, the Fire Department notified Andrew Thomas, the Union President, of the disciplinary action that would be taken against Addeo as a result of his DUI—a 30-day suspension with intent to dismiss. The City thereafter terminated Addeo's employment on September 28, 2015. At no time prior to Addeo's suspension or termination did the City afford him an opportunity for a "*Loudermill* hearing."[2]

On September 23, 2015, five days after receiving notice of the disciplinary action, the Union filed a Step 1 grievance on Addeo's behalf, seeking rescission of his dismissal, reinstatement of his employment as a firefighter, and compensation for all losses. While Addeo was incarcerated, from September 16, 2015, to December 15, 2015, the City's Office of Labor Relations (Labor Relations) held his grievance open and in abeyance at Step 2 of the grievance process. The Step 2 process required an appearance by Union representatives, counsel, and Addeo before the City's Labor Relations Officer.

---

[2] The term "*Loudermill* hearing" refers to the process a governmental entity must afford a public employee who has a constitutionally protected interest in his or her employment prior to terminating the employee's employment. *See generally Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

On March 8, 2016, Labor Relations notified Union representatives, including Thomas, that Addeo's Step 2 grievance had not yet been scheduled and that Labor Relations had reserved March 23, 2016, as the hearing date. On March 10, 2016, however, Union representatives, including Thomas, notified Labor Relations that the grievance would not proceed that month and that the Union would hold the hearing in abeyance for a later date. Addeo also did not receive a grievance hearing in April 2016. Union representatives appeared at Labor Relations prepared to proceed on Addeo's grievance in early April, only to be told by Labor Relations and the special investigations officer that the grievance would not be heard that day. Although a new hearing date was not set at that time, it appears a hearing was eventually scheduled for later in the month, as the complaint alleges that on April 25, 2016, the Union canceled the hearing, even though Addeo and other Union representatives "fully expected to proceed." *See* Revised Am. Compl. ¶¶ 40-41.

According to Addeo's revised proposed amended complaint, Labor Relations and the Union continued to hold his grievance in abeyance for the remainder of 2016, and Labor Relations, which controlled the grievance hearing process, refused to schedule a Step 2 hearing. In late December 2016, Addeo called the Union to discuss the grievance and was told that Thomas had determined, "alone and/or at the direction of the City," not to pursue the grievance. *Id.* ¶ 44. Addeo again inquired about the status of his grievance in January 2017 and was again told by a Union representative that Thomas had decided, "on his own and/or at the direction of the City," to "scuttle" the grievance and "drop it." *Id.* ¶ 45. Until Addeo made these inquiries, neither the Union nor Labor Relations had notified him of any decision to scuttle the grievance, and Addeo has never received any written notice of such a decision from the Union or Labor Relations to date. Indeed, to Addeo's knowledge, the grievance still remains in abeyance to date.

4

Although Addeo has attempted to exhaust the mandatory grievance process under the collective bargaining agreement, the Union and the City have frustrated his efforts to date by arbitrarily failing to process the grievance and complete the grievance procedure.

Having conceded that this Court lacks subject matter jurisdiction over the hybrid § 301/duty of fair representation claim he asserted against both the City and the Union in his original complaint based on *Crilly v. Southeastern Pennsylvania Transportation Authority*, 529 F.2d 1355 (3d Cir. 1976),[3] Addeo seeks leave to file an amended complaint to assert (1) a claim under 42 U.S.C. § 1983 against the City for violating his procedural due process rights and (2) a state law breach of duty of fair representation claim against the City and the Union. Addeo alleges the City violated his procedural due process rights by failing to schedule a *Loudermill* hearing or otherwise to give him notice and an opportunity to respond to any charges against him before terminating him on September 28, 2015; by failing to administer, process, schedule, and provide him with a decision regarding his Step 2 grievance; by intentionally scuttling his Step 2 grievance without explanation; and by otherwise failing to protect his rights in the grievance process under the collective bargaining agreement and causing that process to fail. Addeo's breach of duty of fair representation claim is based on similar lapses by the Union, acting "in concert and collusion with the City of Philadelphia and its Office of Labor Relations," Revised Am. Compl. ¶ 73, and includes allegations regarding the Union's failure to advocate for Addeo in a *Loudermill* hearing, which was never held. Defendants oppose Addeo's motion for leave to amend.

---

[3] Although Addeo initially opposed Defendants' motions to dismiss the hybrid § 301/duty of fair representation claim advanced in his original complaint, when the parties appeared for oral argument on all pending motions on October 18, 2017, Addeo clarified that he is seeking to pursue only the claims in his revised proposed amended complaint.

**DISCUSSION**

Under Federal Rule of Civil Procedure 15, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Although Rule 15 "embodies a liberal approach to pleading," *Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2006), leave to amend need not be given "if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party," *Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted" pursuant to Federal Rule of Civil Procedure 12(b)(6). *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

Only futility is at issue here, as Defendants argue leave to amend should be denied because Addeo has failed to allege a cognizable violation of his due process rights and because the exercise of supplemental jurisdiction is inappropriate as to his state law breach of duty of fair representation claim. To withstand dismissal under the Rule 12(b)(6) standard, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The facts pleaded must support "more than a sheer possibility that a defendant has acted unlawfully"; they must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d

225, 233-34 (3d Cir. 2006) (citation omitted). Furthermore, there must be state action: the alleged due process violation must be "fairly attributable to the state." *Jackson v. Temple Univ. of Commw. Sys. of Higher Educ.*, 721 F.2d 931, 932-33 (3d Cir. 1983) (citation omitted). In considering what process is due, courts must balance three factors: (1) the private interest affected by the action, (2) the "risk of erroneous deprivation of such interest through the procedures used" and the probable value of additional procedural safeguards, and (3) the governmental interests at stake in taking the action in question. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Defendants do not dispute, at least for purposes of evaluating Addeo's motion for leave to amend, that, as a firefighter who can only be dismissed for cause under state law, Addeo possessed a property interest in his continued employment protected by procedural due process. *See* 53 Pa. Stat. § 12638 ("No police officer or fireman, except those dismissed during probationary period, shall be removed or discharged, except for cause, upon written charges, and after an opportunity to be heard in his own defense."). Rather, Defendants argue Addeo has not alleged a due process violation because, given his conviction, he was not entitled to a pre-deprivation hearing under *Loudermill*, and because the City was not involved in the decision to discontinue the post-deprivation grievance process.

The Court's analysis of whether Addeo was entitled to a pre-termination hearing begins with *Cleveland Board of Education v. Loudermill*, in which the Supreme Court held that where a public employee has a constitutionally protected property interest in his or her employment, due process requires "a pretermination opportunity to respond." 470 U.S. 532, 547 (1985). The petitioner in *Loudermill*, a security guard for the Cleveland Board of Education, was summarily fired after the Board discovered he had failed to disclose a felony conviction on his job

7

application. *See id.* at 535. The petitioner later brought suit against the Board, alleging the civil service statute that governed his employment was unconstitutional because it did not provide employees with an opportunity to respond to charges against them prior to removal. *See id.* at 536. Applying the three *Mathews* factors, the Supreme Court first observed that an employee's private interest in retaining his employment is significant, noting termination may make it difficult to find work elsewhere. *See id.* at 543. The Court also recognized the "obvious value" of a pre-termination opportunity for the employee to present his side of the case, explaining that "[e]ven where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect." *Id.* Finally, the Court concluded the government's interest in immediate termination did not outweigh the other *Mathews* factors because "affording the employee an opportunity to respond prior to termination would impose neither a significant administrative burden nor intolerable delays," and in those instances where keeping an employee on the job would pose a significant hazard, the government could avoid a due process problem by suspending the employee with pay. *See id.* at 544-45.

Although the Supreme Court held the petitioner in *Loudermill* was entitled to "some kind" of pre-termination hearing, *id.* at 542, the Court stressed this hearing "need not be elaborate": "something less" than a full evidentiary hearing would be sufficient, as long as the employee received "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story," *id.* at 545-46. The purpose of the pre-termination hearing is to determine "whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.*

The Supreme Court has since clarified, however, that a pre-deprivation hearing is not required in all cases. In *Gilbert v. Homar*, for example, the Supreme Court recognized that a reasonably prompt post-deprivation hearing may be sufficient in cases where "a State must act quickly, or where it would be impractical to provide predeprivation process." 520 U.S. 924, 930 (1997). The petitioner in *Gilbert* was a university police officer who was suspended without pay, and without a hearing, after he was arrested on felony drug charges. *See id.* at 926-27. In analyzing the *Mathews* factors, the Court distinguished the severity of suspension from the termination at issue in *Loudermill*, noting that "[s]o long as the suspended employee receives a sufficiently prompt postsuspension hearing, the lost income is relatively insubstantial (compared with termination)." *Id.* at 932. The Court then reasoned the government's interest in immediately suspending employees in "positions of great public trust and high public visibility" who are charged with felonies outweighed the employee's private interest in "the uninterrupted receipt of his paycheck." *Id.* Finally, as to the risk of erroneous deprivation, the Court opined that the filing of charges obviated the need for a pre-suspension hearing because it assured there were reasonable grounds to support an unpaid suspension. *Id.* at 933-34. The Court thus concluded the failure to provide a pre-suspension hearing was not a violation of due process.

Applying *Gilbert*, the Third Circuit and courts within the Third Circuit have recognized that due process does not require a pre-suspension hearing where a government employee in a position of public trust is charged with criminal activity. In *Jerrytone v. Musto*, for example, a panel of the Third Circuit found no due process violation where a public school teacher was suspended without pay after he was indicted on charges of child endangerment, corruption of

9

minors, harassment, and stalking.[4] *See* 167 F. App'x 295, 298-99 (3d Cir. 2006). The court opined the immediate suspension was justified by the state's strong interests in "protecting students and maintaining public confidence in the school system." *Id.* at 301. Furthermore, the court noted a pre-suspension hearing "would have been redundant because a judge had carefully determined that there was probable cause for the criminal charges." *Id.* Similarly, in *Kairo-Scibek v. Wyoming Valley West School District*, a district court in the Middle District of Pennsylvania found no due process violation where a teacher was placed on unpaid suspension without a hearing after she was arrested on charges of assault and child endangerment arising out of conduct in her classroom. *See* 880 F. Supp. 2d 549, 562 (M.D. Pa. 2012). The court in *Kairo-Scibek* compared the teacher to the plaintiffs in *Gilbert* and *Jerrytone*, noting the teacher was in a position of "great public trust and high public visibility," and had been charged with a felony, creating extraordinary circumstances which excused the need for a pre-suspension hearing. *Id.* Nevertheless, the Third Circuit has made clear that absent such "extraordinary circumstances," firefighters and police officers cannot be suspended without pay without a pre-suspension hearing, even if there are post-suspension procedures in place that would fully compensate erroneously suspended employees. *See Schmidt v. Creedon*, 639 F.3d 587, 596-97 (3d Cir. 2011).

Citing *Gilbert*, *Jerrytone*, and *Kairo-Scibek*, Defendants argue the lack of a pre-suspension hearing in Addeo's case did not violate due process because Addeo was not only charged, but convicted. While these cases support Defendants' arguments that a pre-*suspension*

---

[4] These charges stemmed from allegations that the teacher had allowed students to smoke marijuana in the classroom and made inappropriate sexual comments to female students. The teacher was ultimately acquitted of the charges following a jury trial. *See Jerrytone v. Musto*, 167 F. App'x 295, 298-99 (3d Cir. 2006).

hearing was not required in this case, they do not dispose of Addeo's claim he was entitled to "some kind of hearing" prior to *termination*.

With respect to the government's interest, the City undoubtedly has a valid interest in promptly removing an incarcerated firefighter convicted of a second DUI from active duty in order to protect public safety and public confidence in the fire department. As a firefighter, Addeo occupied a "position of great public trust and high public visibility," comparable to the police officer in *Gilbert* and the teachers in *Jerrytone* and *Kairo-Scibek*, and the offense, while not a felony, was nevertheless serious. More importantly, all of the cases cited by Defendants in which the lack of a pre-deprivation hearing was excused dealt with suspension, not termination.[5] As the Supreme Court recognized in *Gilbert*, termination differs significantly from suspension with respect to both length and finality. *See* 520 U.S. at 932. Thus, Addeo's private interest in avoiding termination weighs more heavily in this case than if he were facing only suspension. Defendants cite no case in which the government's interest in promptly *terminating* an employee has been found to be strong enough to excuse some pre-termination process. In fact, the Supreme Court in *Loudermill* explicitly found the governmental interest in immediate termination *did not* outweigh the employee's interest in retaining his employment. *See Loudermill*, 470 U.S. at 544.

---

[5] Indeed, none of the plaintiffs in these cases was ever terminated. After the criminal charges against him were dismissed, the university police officer in *Gilbert* was demoted, but not before he had an opportunity to "tell his side of the story" to his supervisor and the university president. *See* 520 U.S. at 926-28. The teacher in *Jerrytone*, who requested a stay of the post-suspension hearing in his case pending the outcome of the criminal charges against him, was ultimately acquitted of those charges and resigned before a hearing was held. *See* 167 F. App'x at 298-99. And the teacher in *Kairo-Scibek* was reinstated with back pay after the charges against her were nol prossed, while the post-suspension grievance process was ongoing. *See* 880 F. Supp. 2d at 563.

The risk of erroneous deprivation is in some respects lower here than in the cases cited by Defendants because Addeo was not merely charged criminally—he was actually convicted at trial. However, the Supreme Court's reasoning in *Loudermill* underscores the increased value of added safeguards in termination cases, recognizing that "[e]ven where the facts are clear, the appropriateness or necessity of the discharge may not be" and that a pre-termination hearing is likely to provide "the only meaningful opportunity [for the employee] to invoke the discretion of the decisionmaker." *See id.* at 543. While Addeo's conviction conclusively established that the charges against him were true, whether it also established the appropriateness of termination (as opposed to suspension) depends on facts that have not yet been developed. Defendants argue that under Fire Department policy, "[a] second DUI infraction leads to dismissal," as does failure to report a DUI arrest to the Department within 96 hours or failure to cooperate with a DUI investigation. City's Reply to Pl.'s Suppl. Br. in Supp. of Cross-Mot. for Leave to File Am. Compl. 3. But this policy is not part of the record, and cannot be considered at this juncture. Addeo alleges the Department, in fact, had discretion over whether or not to terminate him and had exercised this discretion not to terminate other firefighters for similar infractions. *See* Addeo Decl. ¶¶ 2-3. Thus, a pre-termination hearing may not have been redundant, as Defendants claim.

Viewing the facts in the light most favorable to Addeo, as the Court must at this stage, Addeo's heightened interest in retaining his employment and the added value of a pre-termination hearing in mitigating the risk of erroneous deprivation outweigh the City's interest in immediately terminating rather than suspending him. Therefore, Addeo's allegations that the

City terminated him without a pre-termination hearing are sufficient to state a due process claim against the City under *Loudermill*, and Addeo's motion for leave to amend will be granted.[6]

Finally, as to Addeo's state law breach of duty of fair representation claim, Defendants argue only that, should the procedural due process claim go forward, this Court should decline to exercise supplemental jurisdiction over the state law claim because it substantially predominates over the federal claim. *See* 28 U.S.C. § 1367(c)(2) (providing a district court "may decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if . . . the claim substantially predominates over the claim or claims over which the district court has original jurisdiction"). The Third Circuit has cautioned that because declining jurisdiction over state law claims pursuant to § 1367(c)(2) prevents litigants and the courts from realizing the advantages of a single suit, this authority "should be invoked only where there is an important countervailing interest to be served by relegating state claims to state court," which "will normally be the case only where 'a state claim constitutes the real body of a case, to which the federal claim is only an appendage.'" *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 727 (1966)). As pleaded, Addeo's state law and due process claims arise out of the same common nucleus of operative facts and will, at a

---

[6] Because Addeo's revised proposed amended complaint sufficiently alleges a due process violation based on the City's failure to provide him a pre-termination hearing, the Court need not decide whether the complaint also alleges a due process violation based on the City's alleged role in preventing him from obtaining a prompt post-termination hearing via the grievance process. The Court agrees with Defendants, however, that the allegations of post-termination wrongdoing on the part of the City are exceedingly thin. While Addeo claims the City "intentionally 'scuttl[ed]'" his grievance, Revised Am. Compl. ¶ 61.m., the only facts pled to support this claim are vague allegations that an unidentified Union representative twice advised him that the Union President determined, "alone and/or at the direction of the City," to drop the grievance, *id.* ¶¶ 44-45. Moreover, although the Court cannot consider the City's documentary evidence at this stage, the Court notes that the exhibits to the City's reply to Addeo's supplemental brief in support of his cross-motion for leave to file an amended complaint suggest the decision to withdraw Addeo's grievance was made by the Union in April or May 2016.

minimum, involve overlapping evidence.  In these circumstances, the interests of judicial economy, convenience, and fairness to litigants will be best served by continuing to exercise supplemental jurisdiction over Addeo's state law claim.

For all of the foregoing reasons, Addeo's motion for leave to amend will be granted, and Addeo's revised proposed amended complaint will be filed.  An appropriate order follows.

BY THE COURT:


   /s/ Juan R. Sánchez
Juan R. Sánchez, J.