IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW ADDEO | : | CIVIL ACTION |
| | : | |
| v. | : | No. 17-2239 |
| | : | |
| PHILADELPHIA FIREFIGHTER AND | : | |
| PARAMEDIC UNION: LOCAL 22 OF | : | |
| THE INTERNATIONAL | : | |
| ASSOCIATION OF FIREFIGHTERS, et | : | |
| al. | : | |

## MEMORANDUM

**Juan R. Sánchez, C.J.**                                                    **November 20, 2018**

Plaintiff Andrew Addeo, a City of Philadelphia (City) firefighter twice arrested, and once incarcerated, for driving under the influence (DUI), brings this suit against the City and his union, the Philadelphia Firefighters' and Paramedics' Union International Association of Fire Fighters Local 22 (the Union), for terminating him after his second DUI arrest, and failing to grieve his termination. More specifically, Addeo claims the City violated his procedural due process rights by, inter alia, failing to provide him with a pre-termination hearing despite his failure to disclose his second DUI until hours before he was required to report to jail. He also claims the City and Union breached their duty of fair representation by colluding to scuttle his grievance regarding his termination—even though the applicable collective bargaining agreement required his dismissal. The City and Union have each filed a motion for summary judgment. Because there are no genuine disputes of material fact and both Defendants are entitled to judgment as a matter of law, the motions will be granted.

## FACTS

Addeo worked as a firefighter for the City of Philadelphia Fire Department from April 2004 until September 2015. During the relevant time period, the Union was the exclusive labor

bargaining unit for firefighters and paramedics employed by the City. *See* Pl.'s Opp'n to Defs.' Mots. Summ. J. (Opp'n) Ex. H.

As a Fire Department employee and Union member, Addeo was subject to the "Disciplinary Code" in the Collective Bargaining Agreement (CBA) between the City and Union. The Disciplinary Code establishes punishments for various types of misconduct, including driving under the influence of alcohol (DUI). Opp'n Ex. H, at 41-60.[1] Pursuant to § 2:07 of the Disciplinary Code, the penalty for the first time a firefighter is "arrested off-duty for operating a motor vehicle under the influence of alcohol in violation of the DUI policy" is a 160-hour suspension. *Id.* at 49. The penalty for a second arrest is termination. *Id.* The "reckoning period" for this violation—the period during which a subsequent DUI will be considered a second offense—is the duration of the firefighter's employment. *Id.* The Disciplinary Code also states that discipline will be "rescinded" where the charges are "dropped," but does not define "dropped." *Id.*

In August 2012, Addeo was arrested for his first DUI while off duty. Opp'n Ex. A ¶¶ 36-37. He subsequently participated in the Accelerated Rehabilitative Disposition (ARD) program, which he completed successfully. *Id.* ¶¶ 37, 39. The City also punished Addeo for his arrest. During the course of those disciplinary proceedings, Addeo was instructed that a subsequent arrest for driving under the influence would result in his termination. Union Mot. Summ. J. (Union Mot.) Ex. E, at 7 (January 4, 2013, memorandum reflecting Addeo's written acknowledgment that "if

---

[1] The Fire Department also maintains a separate "DUI Policy," the applicability of which the parties dispute. However, the Court considers this dispute immaterial. Section 2:07 of the CBA—the Disciplinary Code—calls for dismissal after a second, off-duty DUI arrest. There is no dispute that Addeo was dismissed on this basis. Because the Court finds that this was sufficient grounds to justify Addeo's termination, whether Addeo may also have been terminated for violations of the DUI Policy (such as for failing to report his DUI within 96 hours of his arrest or failing to consent to a blood draw) is not material.

you are charged with another D.U.I., it will result in [y]our dismissal from the Philadelphia Fire Department"). After he was disciplined, Addeo received a letter from the Adult Probation Supervisor dated October 21, 2013, indicating he had completed the program and that ARD "was not a DUI conviction or admission of guilt." *Id.* ¶ 39.[2] The letter also informed Addeo that he had to petition the court to expunge the DUI. *Id.* ¶ 40. Addeo did not, thereafter, seek to have the DUI expunged or challenge his discipline by the City for the arrest on the basis that the charge was "dropped" within the meaning of the CBA. Union Mot. Ex. C ¶ 4. In September 2018, some 16 months after filing this lawsuit (and several years after the October 2013 letter), Addeo learned that the charge had, in fact, been expunged. Opp'n Ex. A, ¶¶ 49-53; *see also* Opp'n Ex. L, at 4.

On March 8, 2015, Addeo was arrested for DUI in Bucks County. Following his arrest, he was taken to a local hospital, where he refused to submit to a blood test.[3] Addeo contested this second DUI. Am. Compl. ¶ 23. He was convicted after a trial and ordered to report for incarceration within 24 hours. *Id.* It was only *after* the conviction on September 15, 2015, that Addeo reported the arrest, conviction, and sentence to the Union. *Id.* ¶ 25. He waited *one more* day—until September 16—to report his arrest, conviction, and sentence to the City. *Id.* ¶ 24.

On September 18, 2018, the City mailed to Addeo's home address a document entitled, "Notice of Intent to Dismiss" (NOID). City Motion Summ. J. (City Mot.) Ex. 7, at 4-5. The NOID advised that, effective ten days from service, the City intended to dismiss Addeo for three

---

[2] The Court notes that the letter is referenced in Addeo's Declaration in support of his opposition to the defendants' motions for summary judgment. The letter itself, however, is not attached.

[3] Addeo claims this fact is disputed, citing his own declaration, in which he states that a breathalyzer was completed and used at trial to convict him. However, the declaration does not mention a blood test and thus does nothing to dispute the Affidavit of Probable Cause. Union Mot. Ex. F, at 6 ("Addeo was transported from the scene to St. Mary's Medical Center for a blood draw" and "Addeo refused the blood draw"). Accordingly, the Court finds there is no genuine dispute.

violations: (1) "[c]onduct unbecoming a member," in violation of §§ 1:00, 1:17, and 1:18 of the Disciplinary Code; (2) "[a]lcohol intoxication and drug use" in violation of § 2:07 of the Disciplinary Code; and (3) "[n]eglect of duty," in violation of § 4:05 of the Disciplinary Code. *Id.* The NOID further identifies the factual basis for these violations and the resulting dismissal:

> In that on Sunday March 8, 2015 you were arrested in Bucks County for DUI. During your arrest you refused to cooperate with the police investigation by refusing to give a blood sample which is a direct violation of the Fire Department's Policy. The Fire Department was not aware that you were arrested on March 8, 2015, you failed to notify the Fire Department of your arrest, the Fire Department was notified of your March 8, 2015 arrest on September 15, 2015 six (6) months later which is a violation of the Fire Department's Directive[s], Regulation[s], and Polici[e]s.
>
> By these actions you have violated Directive #25 and your Oath of Office, have demonstrated Conduct Unbecoming a Member and violated Directive #54 DUI policy, thereby rendering yourself unfit to be a Firefighter in the Philadelphia Fire Department. For these reasons you are notified of intention to dismiss effective ten (10) days from service of this notice.

*Id.*at 5. The NOID also contains language apprising Addeo of his right to contest the intended action and to seek review of the dismissal by the Civil Service Commission:

> If you believe that this intended action is unjustified, you may, under regulations of the Civil Service Commission, within ten days from service of this notice, notify [the Fire Commissioner] in writing of your reasons therefore and summarize the facts in support of your belief. A copy of your letter must be sent at the same time to the Personnel Director.
>
> Your replying to this notice and sending a copy of your reply to the Personnel Director does not constitute an appeal to the Civil Service Commission. You may appeal to the Civil Service Commission only when this intended action becomes final and within thirty days thereafter.

*Id.* at 4.

Contemporaneously with the NOID, the City mailed Addeo (again, to his home address) a Notice of Dismissal with an effective date of September 28, 2015. *Id.* at 2-3. Although the Notice of Dismissal identifies the same violations identified in the NOID (conduct unbecoming a member,

alcohol intoxication and drug use, and neglect of duty) and mirrors the NOID's description of Addeo's misconduct, its closing paragraph states:

> By these actions you have demonstrated Neglect of Duty thereby rendering yourself unfit to be an Officer and serve in the Philadelphia Fire Department. For these reasons, either one of which would be sufficient for your dismissal, effective Monday, September 28, 2015 you are [d]ismissed from your position at the Philadelphia Fire Department.

*Id.* The Notice of Dismissal, like the NOID, contains language apprising Addeo of his right to appeal to the Civil Service Commission:

> You are further notified and advised that the Philadelphia Home Rule Charter provides that any employee who is dismissed after [s]atifactorily completing his probationary period of service may, within thirty days after such dismissal, appeal to the Civil Service Commission for review thereof.

*Id.* at 2.

At no time did Addeo exercise his right to review by the Civil Service Commission. City Mot. Ex. 3, at 57:15-21. Instead, Addeo elected to challenge his termination through the grievance process established in the CBA, which permits the Union to challenge an adverse employment action. Opp'n Ex. H at 16. During "Step I," the grievant or Union must submit the grievance in writing and specify the CBA provisions which the action is alleged to contravene. *Id.* at 16-17. The City has seven days to respond. *Id.* at 17. At Step II, the grievance "may be referred by the Union . . . for review by the Director of Labor Relations or his/her designee." *Id.* at 17. Step III is binding arbitration. *Id.* On September 23, 2015, the Union timely filed a grievance on Addeo's behalf. Union Mot. Ex. J. Addeo's grievance was held in abeyance between Step I and Step II while Addeo served his sentence.

Addeo's termination also implicated "Directive 25," which appears to be a policy promulgated by the Fire Department concerning the discipline of its members. Opp'n Ex. F. Directive 25 establishes a procedure for a "Fire Board of Investigation," whose purpose is to

"inquire into all the facts" of a disciplinary case and "report their findings to the Fire Commissioner." *Id.* at 4. A firefighter may be represented at a hearing before the Fire Board by counsel or the Union "[i]f the member so desires." *Id.* at 5. The terms of the Directive make clear that a Fire Board hearing is not waivable where the proposed disciplinary action calls for termination. *Id.* Addeo never received a hearing before the Fire Board of Investigation.

On March 8, 2016, Dana Johnson, Deputy Director of the City's Office of Labor Relations, emailed Karen Boyle, an administrative assistant for the Union, about the schedule for several open grievances. *See* Union Mot. Ex. L, at 5-6. Johnson proposed hearing three grievances, including Addeo's, on March 23, 2016. *Id.* Boyle responded two days later that Johnson could "take Addeo off this month's hearings" as the Union was "going to hold his hearing in abeyance for a later date." *Id.* at 5.

On April 20, 2016, Johnson again emailed Boyle about scheduling unheard grievances— including Addeo's—for an April hearing day. *Id.* at 12-13. Boyle responded on April 25 that the Union was "withdrawing Rodziak and Addeo grievances." *Id.* at 12. She also appears to have forwarded a string of emails to the City, including two from Union President Andrew Thomas. *Id.* The first Thomas email, sent at 8:15 a.m. on April 25, states: "I am canceling the grievances on Addeo and Rodziak" *Id.* The second Thomas email, sent at 8:31 a.m. that same morning, states: "Karen, Please notify [the City] we are cancelling Rodziak and Addeo grievances, and moving forward with Sutton." *Id.* Thomas appears to have made the decision to withdraw Addeo's grievance before proceeding to the Step II hearing unilaterally. Union. Mot. Ex. T, at 7.[4] There is no evidence that Addeo was notified that the Union was withdrawing his grievance at that time.

---

[4] In an affidavit proffered by the Union, Thomas states that it was his opinion that Addeo's "grievance had no merit," as all of Addeo's alleged misconduct constituted "clear violations of the Disciplinary Code and the DUI Policy." Union Mot. Ex. T ¶ 4. Thomas also avers that Addeo

Between April 7, 2016, and August 31, 2016, Addeo and Union Vice President Michael Bresnan were in regular contact by telephone and text message concerning the status of Addeo's grievance. *See* Union Mot. Ex. R.[5] In May, much of the conversation concerned Union President Thomas's alleged failure to comply with the Union's "Grievance Policy," which purportedly required a Grievance Committee composed of Union officials to vote before terminating a grievance. *Id.*; *see also* Opp'n Ex. D, at 6. Bresnan complained to Addeo that Thomas violated that policy by terminating Addeo's grievance without the requisite vote. Union Mot. Ex. R, at 3-4. On May 28, Bresnan told Addeo that he was "gonna reach out to each board member to overrule Andy Thomas." *Id.* at 4. Bresnan emailed the members of the Committee on May 29 requesting that they vote to approve resurrecting Addeo's grievance. *See* Opp'n Ex. D, at 6. The results were inconclusive: two members of the Committee voted to proceed, one member voted against proceeding, another expressed concerns about proceeding but did not vote, and the final member appears not to have responded. *Id.* at 7.

Notwithstanding the inconclusive Committee vote, on June 2, 2016, Bresnan emailed two City labor officials, Dana Johnson and Monica Marchetti Brock, attempting to reverse Thomas's prior withdrawal of Addeo's grievance. *Id.* at 8. Bresnan claimed that Karen Boyle, the Union administrative assistant who had communicated the withdrawal of the grievance to the City, meant to say that Addeo's grievance was canceled for the April hearing day, not withdrawn. *Id.* ("The

---

asked him to use "improper influence," i.e., Addeo's purported political and personal connections, to overturn the discipline. *Id.* ¶ 5. Unwilling to resort to nepotism, and without any documentation or information that might negate the violations, Thomas determined that the grievance had no chance of success. *Id.* ¶¶ 6-7, 9.

[5] The Court acknowledges the dispute as to the admissibility of the text messages at trial. For purposes of deciding the pending motions for summary judgment, the Court presumes the transcript of messages is admissible.

email sent to you from Karen Boyle, that was forwarded from Andy Thomas, said cancel not withdraw. Karen mistakenly used the term withdraw as Andy Thomas confirmed today in our conversation."). Bresnan and another Union official then attended the June 8, 2016, hearing day intending to present Addeo's case, but the grievance was not heard. Rather, as Bresnan reported to Thomas in an email sent hours after the June 8 meeting, the City declined to hear the grievance until it clarified the purported miscommunication with Thomas directly:

> Today Dana Johnson stated she would not hear Addeo's Step 2 Grievance because Monica Marchetti Brock wanted to hear from you first. Below is the email I sent Dana and Monica after we had the discussion in the office (Ed, Jerry, You, and I). I guess my email and word is not good enough for Monica. So if you could email her to concur with my below email [explaining the miscommunication] I believe they will hear the case as Dana mentioned scheduling it for the next meeting.

*Id.* The record does not reflect whether Thomas ever responded to Bresnan's email. There is also no evidence that any further action was taken on Addeo's grievance, although Bresnan and Addeo appear to have been in contact via telephone and text message as late as August 31, 2016. Union Mot. Ex. R, at 6.

On May 16, 2017, Addeo filed this civil action, asserting a "hybrid § 301/ duty of fair representation" claim against the City and Union. He later conceded the Court lacked jurisdiction to hear such a claim and sought leave to amend to assert a claim pursuant to 42 U.S.C. § 1983 against the City for violating his procedural due process rights and a state law claim for breach of the duty of fair representation against both the City and the Union. The Court permitted the amendment over Defendants' objections on March 19, 2018, and Defendants subsequently moved to dismiss. Those motions were subsequently denied without prejudice. On September 6, 2018, Defendants each filed a motion for summary judgment, which Addeo opposed. The Court heard oral argument on October 17, 2018.

## DISCUSSION

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine" dispute is one where "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation and internal quotation marks omitted). To defeat summary judgment, "the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant]." *Burton v. Teleflex, Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (alteration in original) (citation and internal quotation marks omitted).

The Court first considers Addeo's § 1983 claim against the City for violating his procedural due process rights. He claims the City violated his rights by terminating his employment without a pre- or post-termination hearing. The City argues that it is entitled to summary judgment because (1) a pre-termination hearing was not required due to the exigencies of the situation, and (2) it provided post-termination process that the Union ultimately withdrew. The Court will grant summary judgment in favor of the City.

To prevail on a procedural due process claim, a plaintiff must establish: "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide

'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). The violation must be "fairly attributable" to a state actor. *Jackson v. Temple Univ.*, 721 F.2d 931, 932-33 (3d Cir. 1983). Here, the only question before the Court is whether the City met its due process obligations, as the City does not appear to contest that Addeo possessed a property interest in his continued employment or that his termination deprived him of that interest. In considering what process is due, courts must balance three factors: (1) the private interest of the individual at stake; (2) the government actor's "interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens"; and (3) the risk of erroneous termination and the value of additional procedure. *Biliski v. Red Clay Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 221 (3d Cir. 2009) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985)).

At the outset, the Court notes that, in the mine run of cases, due process requires that a tenured municipal employee, like Addeo, receive notice of the charges against him or her and an opportunity to respond prior to termination. *See Loudermill*, 470 U.S. at 546. However, "the [Supreme] Court has recognized, on many occasions, that where a State must act quickly, or where it would be impractical to provide pre-deprivation process, post-deprivation process satisfies the requirements of the Due Process Clause." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). The City asserts Addeo's situation falls within this exception. Addeo claims his *Loudermill* rights are "inviolate," and he is entitled to a pre-termination hearing even though he concealed his arrest between March and September 2015 and only revealed it hours before he was due to begin a 90-day jail sentence. Mindful of both the *Gilbert* exception and an employee's *Loudermill* rights, the Court turns to the requisite balancing.[6]

---

[6] The Court previously addressed these factors in its ruling on Addeo's motion for leave to amend, finding, based solely on the allegations in Addeo's proposed Amended Complaint, that Addeo's interest in returning to his employment and the added value of a pre-termination hearing in

The first factor requires the Court to consider the private interest affected by the proposed action—here, Addeo's interest in retaining his position as a firefighter. *Biliski*, 574 F.3d at 221. Both *Loudermill* and *Gilbert* indicate that termination implicates a greater interest than suspension. *See Loudermill*, 470 U.S. at 543 ("[T]he significance of the private interest in retaining employment cannot be gainsaid."); *see also Gilbert*, 520 U.S. at 932 ("While our opinions have recognized the severity of depriving someone of the means of his livelihood, they have also emphasized that in determining what process is due, account must be taken of 'the length' and the 'finality of the deprivation.'"). Pursuant to *Loudermill* and *Gilbert*, the Court finds Addeo possessed a significant interest, as his continued employment was in jeopardy (as compared to a suspension with or without pay).

The second factor requires the Court to consider the governmental interests at stake in taking the action in question—here, the City's interest in expeditiously removing poor performers and avoiding administrative burdens. *Biliski*, 574 F.3d at 221. The Court finds that the City had a strong interest in quickly removing Addeo from its employ. In *Gilbert v. Homar*, the Supreme Court recognize that a public employer has "a significant interest in immediately suspending, when felony charges are filed against them, employees who occupy positions of great public trust and high public visibility." *Gilbert*, 520 U.S. at 933-34; s*ee also*, *Jerrytone v. Musto*, 167 F. App'x 295, 298-99 (3d Cir. 2006) (finding no due process violation where public school teacher was suspended without pay after being indicted on felony charges); *Kairo-Scibeck v. Wyo. Valley W. Sch. Dist.*, 880 F. Supp. 2d 549, 562 (M. D. Pa. 2012) (finding no due process violation where a

---

mitigating the risk of an erroneous deprivation outweighed the City's interest in immediately terminating him. The Court now revisits the balancing analysis in light of the more fulsome record and the heavier burden Addeo bears at the summary judgment stage.

teacher was placed on unpaid leave without a hearing after she was arrested on assault and child endangerment charges).

Although *Gilbert*, *Jerrytone*, and *Kairo-Scibeck* all involved a government employer's suspension of an employee suspected of criminal activity, these cases establish a helpful baseline for the strength of the government's interest in quickly *terminating* an employee who was not merely charged but convicted of criminal misconduct and who covered up that criminal misconduct for months. In *Gilbert*, *Jerrytone*, and *Kairo-Scibeck*, the courts found that the government possessed a substantial interest in removing employees *accused* of crimes. In no case had the employee been found *guilty beyond a reasonable doubt* of any criminal wrongdoing. Here, not only was Addeo convicted of criminal conduct, but he concealed his arrest for roughly six months until the very eve of his surrender to state custody. Surely, if the constitution recognizes a public employer's strong interest in suspending a public employee where there is probable cause to suspect he or she engaged in criminal misconduct, it recognizes an even greater interest in terminating a public employee who spent months covering up conduct for which he was found guilty beyond a reasonable doubt and incarcerated. Upon these aggravated facts, the Court finds that the City had a strong interest in removing Addeo from its firefighting ranks.

The third factor is the "risk of erroneous deprivation…and the likely value of any additional procedures." *Biliski*, 574 F.3d at 221 (quoting *Gilbert*, 520 U.S. at 933). Based on the summary judgment record, Court finds that there was no risk of erroneous deprivation in this instance and additional procedures would have served no purpose. In *Gilbert*, the government employer argued that any additional process would be unnecessary because the plaintiff's supervisors lacked discretion under the relevant employment policy to do anything other than suspend him without pay pending resolution of his criminal charges. Although the employer's interpretation of the

policy was disputed, the Supreme Court acknowledged in dictum that, if the employer's interpretation were correct, no further process would be required because "there would be nothing to consider at the hearing except the independently verifiable fact of whether an employee had indeed been formally charged with a felony." *Gilbert*, 520 U.S. at 933; *accord Codd v. Velger*, 429 U.S. 624, 627 (1977) (finding due process did not require a hearing where there was no factual dispute as to the underlying misconduct).

The Supreme Court's reasoning applies equally here. There is no genuine dispute as to the pertinent material facts: (1) under the CBA's Disciplinary Code, the penalty for a second DUI arrest is termination; (2) Addeo was arrested for his second DUI on March 8, 2015 and was convicted of the offense on September 15, 2015; and, (3) Addeo did not report the arrest and conviction to the City until September 16, 2015.[7] In these circumstances, there was no factual dispute for a factfinder to resolve at a pre-termination hearing and the value of any additional process would have been negligible. Moreover, because Addeo had already been convicted at the time the City disciplined him, there was no risk of erroneous deprivation. Accordingly, the Court finds that this third factor weighs in the City's favor.

This case is distinguishable from the facts of *Loudermill*, which Addeo cites. In that case, the Supreme Court recognized that allowing an employee a pre-termination opportunity to present his or her side of the story would be of "obvious value" as "dismissals for cause will often involve factual disputes" and "even where the facts are clear, the appropriateness or necessity of the discharge may not be." *Loudermill*, 470 U.S. at 543. The Supreme Court also noted Loudermill's

---

[7] Addeo does not argue, and has presented no evidence suggesting, that the penalties in the Disciplinary Code, as opposed to the DUI Policy, are optional. Moreover, as will be discussed below, the 2015 arrest was his second DUI arrest.

"termination involved arguable issues," as his "dismissal turned not on the objective fact that he was an ex-felon or the inaccuracy of his statement to the contrary, but on the subjective question whether he had lied on his application form." *Id.* at 543 n.9. These concerns are simply not present in Addeo's case. Unlike Loudermill's termination, Addeo's dismissal *did* turn on the objective fact of his second arrest.[8] Moreover, the undisputed fact that the Disciplinary Code in the CBA required dismissal for a second DUI arrest alleviates any concern over the "appropriateness or necessity" of Addeo's discharge. Accordingly, the Court finds *Loudermill* is inapposite and additional process would have served no purpose here.

In light of the foregoing, the Court finds that Addeo's private interest in retaining his employment was outweighed by the City's interest in removing him under the particular circumstances, where there was essentially no risk of an erroneous termination. Accordingly, post-termination process was sufficient to vindicate Addeo's due process rights. Summary judgment will, therefore, be granted in the City's favor on this aspect of Addeo's § 1983 claim.

The City is also entitled to summary judgment on Addeo's claim that it deprived him of *post*-termination due process. Third Circuit precedent makes clear that a public employer cannot be liable for a failure to provide adequate post-deprivation process where the municipal

---

[8] Addeo asserts his March 2015 DUI is not a second arrest because his August 2012 DUI arrest was expunged from his criminal record. Although Addeo does not make this argument in connection with his *Loudermill* claim, to the extent Addeo might argue that this legal theory increases the value of additional process, the Court disagrees. Addeo has offered no evidence that he, the Union, or the City, were aware that the first arrest had been expunged at the time he reported his second arrest to the City and Union—or that such a fact would have been independently ascertainable at that time. In fact, Addeo concedes that although he was aware of the possibility of expungement in October 2013, he chose to do nothing until September 2018, when he verified the expungement. Moreover, the documents he offers to substantiate the expungement provide no indication of *when* that expungement took place, which would be material to whether Addeo, the Union, or City would have been able to verify it through additional process. *See* Opp'n Ex. L.

employee—or his representative—fails to follow, or abandons, the procedures set forth in an otherwise acceptable collective bargaining agreement. *See Companiony v. Murphy*, 658 F. App'x 118, 122 (3d Cir. 2016) ("Because Companiony failed to take advantage of post-termination processes, and has also not shown that such processes were inadequate, she cannot bring a claim for failure to provide procedural due process relating to her post-termination proceedings."); *Luciani v. City of Phila.*, 643 F. App'x 109, 112 (3d Cir. 2016) ("Since Luciani failed to avail himself of the available, constitutionally sufficient avenues for relief, his procedural due process claim must fail."); *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate."); *Dykes v. SEPTA*, 68 F.3d 1564, 1571 (3d Cir. 1995) (finding no due process violation where the employee's union abandoned his grievance prior to arbitration). "When access to [such] procedure[s] is absolutely blocked or there is evidence that the procedures are a sham," however, "the plaintiff need not pursue them to state a due process claim." *Alvin*, 227 F.3d at 118.

Here, the undisputed record shows Addeo's grievance was terminated by the Union between Step I and Step II, and no arbitration was conducted thereafter. Thus, Addeo's claim, like those in *Companiony*, *Luciani*, *Alvin*, and *Dykes*, must fail on account of the Union's abandonment of the grievance process. Moreover, Addeo failed to save his claim by producing evidence that *the City* "absolutely blocked" his access to due process or that the process offered was a "sham." Rather, the uncontroverted evidence indicates the Union withdrew Addeo's grievance and the City took the withdrawal at face value. Under such circumstances, the appropriate cause of action is one against the Union for breach of the duty of fair representation, not a procedural due process claim against the City. *See Dykes*, 68 F.3d at 1572 ("If a public employee believes that the

grievance process was defective, he may seek relief available under state law."). In light of the foregoing, summary judgment will be granted as to Addeo's post-termination deprivation claim as well.

Count II of Addeo's Amended Complaint asserts a claim against the City and the Union for breach of the duty of fair representation. At root, Addeo asserts the City and Union colluded in sabotaging his grievance in breach of their duty to represent him fairly. The City asserts it is entitled to summary judgment because Addeo has failed to establish that it owed him a duty of fair representation. The Union argues it is entitled to summary judgment because (1) Addeo failed to exhaust his internal Union remedies before filing suit and (2) he failed to produce evidence that the Union acted arbitrarily or in bad faith by withdrawing his grievance.[9] For the reasons discussed below, summary judgment will be granted in favor of both Defendants.

The City argues it is entitled to summary judgment because it is a municipality, not a union, and therefore owed Addeo no duty to fairly represent him. The Court agrees with the initial premise of the City's argument: the City is a city—not a labor union. Nonetheless, to the extent that Addeo's claim against the City is more properly characterized as a claim for breach of the CBA, the City *could*—at least theoretically—be liable to Addeo for its role in his termination. *Lopresti v. County of Lehigh*, 572 F. App'x 133, 137 (3d Cir. 2014) ("In Pennsylvania, an aggrieved public employee cannot sue his employer for breach of a labor contract governed by state collective bargaining laws unless he shows by specific facts, that the employer actively participated in the union's bad faith or that the employer conspired or colluded with the union to deny the employee his rights under the contract." (quoting *Garzella v. Borough of Dunmore*, 62 A.3d 486, 494 (Pa.

---

[9] Addeo does not argue that he was discriminated against by the Union. To the extent he does, he offers no evidence establishing disparate treatment.

16

Commw. Ct. 2013))); *see also Pa. Soc. Servs. Union v. Lynn*, 677 A.2d 371, 374 (Pa. Commw. Ct. 1996).

Even assuming Addeo intended to sue the City for its conduct in connection with his termination, the City is still entitled to summary judgment. The record reflects that the City repeatedly attempted to schedule Addeo's grievance for a hearing, only to be told by the Union that the grievance was being withdrawn. Although a City official later declined to proceed without confirmation from Thomas that the withdrawal was in error, the very same email suggests that once the City received clarification, it was willing to proceed. Addeo has failed to present evidence from which a reasonable juror could find the requisite nexus of misconduct between the City and the Union. The City is entitled to summary judgment on Addeo's claim that it breached the duty of fair representation or breached the CBA.

The Union argues it is entitled to summary judgment on both procedural grounds (exhaustion) and the merits. As to procedure, Pennsylvania law requires that a union member avail himself of internal union remedies to mediate disputes with the union before seeking judicial intervention. *See Narcotics Agents Reg'l Comm. ex rel. McKeefery v. Am. Fed. of State, Cty., & Mun. Emps.*, 780 A.2d 863, 867 (Pa. Commw. Ct. 2001) (citing *Falsetti v. Local Union No. 2026, United Mine Workers of Am.*, 161 A.2d 882 (Pa. 1960)). This requirement is excused where (1) the intra-union procedures are illusory; (2) the union officials have "precluded the member from having a fair or effective trial or appeal"; (3) compliance would be "unreasonable burdensome"; or (4) exhaustion would subject the member to "an injury that is in a practical sense irreparable." *Falsetti*, 161 A.2d at 889-90. Addeo invokes the first two exceptions, arguing excusal is warranted because (1) the Union's withdrawal of his grievance made any putative appeal illusory, and (2) he

was unaware of the International's appellate process and never received notice of the Union's decision to withdraw his grievance.

Although Addeo's first argument is unpersuasive, his second argument raises a genuine factual issue as to whether exhaustion should be excused.[10] As noted above, exhaustion may be excused where union "officials have, by their own actions, precluded the member from having a fair or effective trial or appeal. *This includes those situations in which a member is not given due notice, right of hearing or review,* and those where the association's officials are obviously biased or have prejudged the member's case before hearing it." *Falsetti*, 161 A.2d at 889 (emphasis supplied). In *International Organization Masters, Mates & Pilots of America, Local 2 v. International Organization Masters, Mates & Pilots of America, Inc.*, the Pennsylvania Supreme Court addressed the exhaustion issue in the context of litigation over the deprivation of union membership. 199 A.2d 432 (Pa. 1964). Several members of the local had been expelled by a trustee appointed by the international. The Supreme Court excused the exhaustion requirement on the grounds that, because the international union failed to follow its own rules, there was nothing from which the members could appeal. *Id.* at 436 ("There are no internal remedies whatsoever to cover the situation created by the union's failure to follow its own constitutionally established procedures.").

---

[10] Addeo offers no authority supporting the notion that a single, adverse decision by a local, *in isolation*, raises an inference that an appeal of that decision through union channels would be illusory. If the Court were to credit this argument, then employees would *always* be excused from exhausting their internal remedies and the exception would quickly swallow the rule. Moreover, *Narcotics Agents*, which Addeo cites approvingly, actually cuts against his position. In that case, the Commonwealth Court—at the motion to dismiss stage—held that exhaustion was excused because the employees alleged the defendant-union caused the underlying dispute as retaliation for the employees joining a separate union. *Narcotics Agents*, 780 A.2d at 867-68. Addeo has offered no similar evidence of partiality here.

18

Addeo raises an issue similar to the one in *Masters, Mates*. Article XVIII of the International Association of Fire Fighters Constitution and By-Laws provides for appellate review of "any final order or decision of a local union." Union Mot. Ex. M. However, there is a genuine issue of fact as to whether the Union ever issued a "final order or decision" from which Addeo could appeal. Addeo has submitted a sworn declaration that he never received any notice that Andrew Thomas, the Union's president, terminated his grievance. Opp'n Ex. A, ¶ 30. Addeo's testimony is buttressed, at least in part, by Thomas's deposition testimony, in which he concedes that he never communicated his decision to terminate the grievance to Addeo prior to withdrawing it. Opp'n Ex. B, at 118:17-20. Although the Union points to text messages as evidence Addeo knew of the Union's withdrawal of his grievance, the text transcript clearly reflects Bresnan's belief that any purported withdrawal of the grievance by Thomas was invalid. Drawing all reasonable inferences in Addeo's favor, this evidence falls short of establishing that Addeo received notice, formal or otherwise, that his grievance was finally terminated. Accordingly, there exists a genuine issue of fact as to whether there was *anything*, much less a "final order or decision" communicated to Addeo, which he could appeal to the international. That being the case, the Court finds that the Union is not entitled to summary judgment on this basis.

The Court may nonetheless grant the Union's motion if Addeo has failed to raise a genuine issue of material fact with respect to the merits of his claims, i.e., that the Union's decision to terminate the grievance was "arbitrary, discriminatory, or in bad faith." *Lopresti*, 572 F. App'x at 136.[11] The crux of the Union's argument is that Addeo has failed to establish the types of

---

[11] Addeo asserts the termination was arbitrary or in bad faith, but not discriminatory.

misconduct that would establish a breach of its duty to represent him in good faith. The Court agrees and will grant summary judgment in the Union's favor.

A union owes its members a duty of fair representation when handling grievances. *Id.* (citing *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). The duty is breached "when a union's conduct toward a member of a collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* (quoting *Vaca*, 386 U.S. at 190). With particular respect to grievances, "[a] breach of the duty of fair representation occurs if the union arbitrarily or in bad faith refuses to move what appears to be a meritorious grievance to arbitration." *Connelly v. Steel Valley Educ. Ass'n*, 119 A.3d 1127, 1134 (Pa. Commw. Ct. 2015). "If the union, having assessed the merits of a particular grievance in good faith and in a nonarbitrary manner, is satisfied that the grievance lacks merit, it may end the grievance prior to arbitration." *Id*. This demanding standard "gives the union the room to make discretionary decisions and choices, even if those judgments are ultimately wrong, and even if its errors in judgment may rise to the level of negligence." *Danao v. ABM Janitorial Servs.*, 142 F. Supp. 3d 363, 371-72 (E.D. Pa. 2015); *see also Martino v. Transp. Workers' Union of Phila., Local 234*, 480 A.2d 242, 250 n.12 (Pa. 1984) (noting that the standard for breach of the duty of fair representation is a "high standard" which "insulates the union from exposure where, after a proper exercise of discretion, it declines to process a frivolous grievance.").[12]

To begin, in order to demonstrate bad faith, the plaintiff must show that the union had hostility toward plaintiff . . . and that the hostility negatively affected the union's representation of the plaintiff." *Lopez*, 2017 WL 2633468, at *4 (quoting *Danao*, 142 F. Supp. 3d at 371-72). An

---

[12] Pennsylvania courts apply the same standards to a claim for breach of the duty of fair representation as federal courts, and the Court therefore considers federal law to be persuasive authority on state breach of duty of fair representation claims. *Lopez v. Transp. Workers Union 234*, No. 16-5515, 2017 WL 2633468, at *4 n.3 (E.D. Pa. June 19, 2017).

action is arbitrary if "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Bakos v. Am. Airlines, Inc.*, 266 F. Supp. 3d 729, 742 (E.D. Pa. 2017); *see also Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 46 (1998) ("A union's conduct can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation.").

Addeo has not created a triable issue of fact as to the Union's alleged bad faith or arbitrary conduct. First, there is simply no evidence before the Court that the Union was openly hostile to Addeo. Addeo does not allege, much less produce evidence of, any kind of personal animus that would suggest the Union acted in bad faith. Second, no reasonable fact-finder could characterize the Union's determination as "so far outside a wide range of reasonableness as to be irrational." *Bakos*, 266 F. Supp. 3d at 742. The Disciplinary Code provides that a firefighter arrested for his second DUI is to be terminated. Addeo was arrested and disciplined for a DUI in 2012. He was arrested again for a DUI in March 2015. Accordingly, per the Disciplinary Code, the only possible disciplinary outcome was termination. The Union's failure to pursue a grievance that would clearly contradict the plain letter of the Disciplinary Code is hardly "irrational." Moreover, Union President Andrew Thomas's affidavit confirms there was nothing untoward about his decision-making: he was aware of Addeo's multiple DUI arrests and the related violations of the Disciplinary Code and determined Addeo's grievance lacked merit. Because Addeo has failed to produce evidence from which a reasonable jury could find bad faith or arbitrary conduct, the Court finds that the Union is entitled to summary judgment as to his claim for breach of the duty of fair representation.

Addeo argues his grievance was meritorious, and thus suggests there is a question of fact as to whether the Union breached its duty of fair representation. None of Addeo's arguments

withstand scrutiny. First, he argues the Union evidenced bad faith by failing to follow an internal "Grievance Policy," the existence of which the parties dispute. Even assuming the Policy existed and Thomas breached it by failing to conduct a vote before withdrawing Addeo's grievance, Addeo offers no evidence suggesting the breach was anything more than negligent, which is not a substitute for bad faith. *Danao*, 142 F. Supp. 3d at 371-72. Second, Addeo also claims it was bad faith for the Union to fail to make use of his claimed connection to a high-ranking City labor official. However, Addeo offers the Court no basis to conclude that the Union's refusal to resort to nepotism was irrational or motivated by any personal antipathy.

Addeo also advances a collateral attack on his 2012 DUI arrest. In the case of arrests for DUI, the Disciplinary Code provides "[d]iscipline will be rescinded if all charges are dropped." Opp'n Ex. H, at 49. Addeo argues that because the charge for his 2012 arrest was expunged after he completed the ARD program, Opp'n Ex. A, ¶¶ 39-53, the charge was "dropped" within the meaning of the CBA. The result, according to Addeo, is that the 2015 arrest would qualify as his *first* arrest, thus sparing him from termination. The Court declines Addeo's invitation to construe the terms of the CBA by determining whether an ARD disposition is a "dropped" charge within the meaning of the Disciplinary Code. Addeo failed to grieve his discipline for the 2012 DUI arrest on this basis (or any basis at all), even after receiving notice that his participation in ARD "was not a DUI conviction or admission of guilt," and offers no legal basis for the Court to revisit that discipline. Opp'n Ex. A, ¶ 39. That the Union also failed to pursue this collateral attack—where there is no evidence Addeo informed it of the expungement or the contents of the October 2013 letter—is neither "so far outside a wide range of reasonableness as to be irrational" nor evidence of bad faith.

Addeo relies on a series of purported comparators, which he claims the Union could have used to support his bid for reinstatement. However, no reasonable factfinder could find that the Union's decision not to pursue a challenge to Addeo's termination based on these "comparators" was irrational or in bad faith because each is distinguishable. Comparator 1 is a firefighter who was arrested for his *first* DUI while he was out sick from work, and then failed to report the DUI for several months. Opp'n Ex. I, at 15-16. The City sought to dismiss the firefighter after suspending him for 160 hours. *Id.* at 11-14. The Union grieved the discipline, and the matter settled. *Id.* at 6-8. The terms of the settlement allowed the Comparator to return to work but upheld the 160-hour suspension—the Disciplinary Code punishment for a first DUI arrest. *Id.* at 6; Opp'n Ex. H, at 49. Here, Addeo received the NOID and Notice of Dismissal after he was arrested for his *second* DUI—for which termination is prescribed—and then failed to report the arrest for several months. Opp'n Ex. H, at 49. The City's decision to follow the Disciplinary Code in the Comparator's matter provides no support for a departure from its plain language in Addeo's case.

Addeo suggests the Union could have relied on two other comparators. Comparator 2 was arrested for DUI on February 1, 2015, and again on May 16, 2015, and the City sought to dismiss him. Opp'n Ex. J, at 5. The charges from the May 16, 2015, DUI were withdrawn by Waterford Township on October 1, 2015. *Id.* The discipline was terminated by an agreement dated February 24, 2016—less than five months after the charges were "dropped." *Id.* Comparator 3 was arrested for his first DUI on February 21, 2015, and suspended by the City for 160 hours. Opp'n Ex. K, at 5. The criminal charges against Comparator 3 were "withdrawn" on May 29, 2015, and the suspension was overturned by an agreement executed on August 12, 2015—less than 90 days after the charges were dropped. *Id.*

These purported comparators are also easily distinguished. Each comparator appears to have acted within a reasonable period of time after their respective charges were withdrawn to overturn their discipline. Addeo did not; he admits that he first confirmed the expungement of the 2012 DUI charge on September 13, *2018*—nearly five years after receiving a letter indicating he had successfully completed the ARD program and that his participation was not an admission of guilt or criminal conviction (October 21, 2013), more than three years after the second DUI arrest (March 8, 2015), and more than a year after filing this litigation (May 17, 2017). *See* Opp'n Ex. L, at 4; Opp'n Ex. A, ¶ 39. No reasonable factfinder could credit this comparison in light of the difference in timing. Moreover, to the extent that the comparisons are relevant, there is no basis to conclude the Union would have known to make them because there is no evidence it knew or should have known of the expungement, which Addeo himself did not become aware of until after filing this action. The Union's failure to present comparisons it did not know could be made cannot fairly be characterized as arbitrary or in bad faith.

Finally, Addeo asserts the Union breached its duty by failing to grieve his termination on the ground that the City erred by not convening a Fire Board hearing. As evidence, Addeo offers a comparison to "Shawn R.," a firefighter who was accused of stealing a cable television box from his fire house and lying about what he had done, and then given notice of intent to dismiss. Shawn R. purportedly waived his right to a Fire Board hearing, even though Directive 25—which governs Fire Board hearings—prohibited waiver in cases where a member may be terminated. Union Reply to Opp'n (Union Reply) Ex. R, at 7. During Shawn R.'s arbitration, the Union argued that termination was unwarranted because Shawn R. corrected his alleged misstatements, there was no evidence he actually removed the cable box from the fire house, and, most importantly for Addeo's purposes, the City had deprived Shawn R. of due process by not convening a Fire Board hearing.

*Id.* at 10. Ultimately, the arbitrator reversed Shawn R.'s termination based on the factual issues raised by the Union, and specifically declined to rule on whether the City's failure to provide a Fire Board hearing was sufficient to justify reinstatement. *Id.* at 13-14.

Addeo argues the Union should have advanced a grievance on the same basis it did for Shawn R., i.e., that termination was unwarranted where the City failed to conduct a Fire Board hearing in violation of Directive 25. The Union counters that Addeo's DUI *conviction*, as opposed to the *allegations* against Shawn R., obviated the need for a Fire Board hearing—the purpose of which is to "inquire" into the facts of a given case and "report [its] findings" to the Fire Commissioner. Union Reply Ex. C., at 4. The Union also argues it is not involved in Fire Board hearings unless requested by the Union member to become involved, and there is no evidence Addeo requested the Union's involvement.

The Court finds the Union's decision to withdraw the grievance despite the absence of a Fire Board hearing does not preclude summary judgment. The Court agrees Directive 25 requires a Fire Board hearing in cases of termination, and none was conducted in Addeo's case. Opp'n Ex. F, at 5; Opp'n Ex. A ¶ 9. However, the Court also recognizes that there is an open question as to whether the failure to provide a Fire Board hearing is sufficient to justify reinstatement under the CBA. The arbitrator never reached this question in Shawn R.'s case, and neither Addeo nor the Union have offered any other arbitral decisions, comparators, or case law which might answer it. In the absence of such precedent (the disregard of which by the Union might create a jury question), the Union was free to exercise its discretion to withdraw the grievance, provided its decision was not made in bad faith or irrational. As has been noted throughout, there is no evidence of any personal animus that would suggest bad faith. And, given the strength of the case against Addeo's continued employment, it was not irrational for the Union to determine that his was not an

appropriate case to re-test the theory it offered in the Shawn R. arbitration. *See Marquez*, 525 U.S. at 46 (noting that a Union's conduct is only irrational "when it is without a rational basis or explanation."). Accordingly, the failure to grieve the lack of a Fire Board hearing does not raise a jury question.

Because Addeo has failed to establish a genuine issue of material fact as to the Union's purported arbitrary decision-making or bad faith, and the Union is entitled to judgment as a matter of law, summary judgment will issue in its favor.

**CONCLUSION**

For the reasons explained above, the Court finds there are no genuine issues of material fact and both Defendants are entitled to judgment as a matter of law. Accordingly, the Court will grant summary judgment in favor of the City on Count I and in favor of the City and Union on Count II.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.